UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re INFOMOTION SPORTS TECHNOLOGIES, INC., <br><br> Debtor | Docket No. _____ <br><br> Chapter 11 |

## MOTION OF THE DEBTOR FOR INTERIM AND PERMANENT ORDERS AUTHORIZING THE USE OF CASH COLLATERAL

NOW COMES the Debtor in this action and requests that the Court enter an order:

1. Authorizing the use of the Debtor's prepetition assets ("Cash Collateral") on an emergency basis in an amount necessary to avoid immediate and irreparable harm;

2. Entering an order setting a final hearing date on the continued use of Cash Collateral; and

3. Authorizing the use of Cash Collateral through July 31, 2016, in the ordinary course of business;

4. Granting the Lienholders (defined below) Replacement Liens to the extent of (a) the diminution in value of the Lienholders' prepetition collateral after the Petition Date resulting from the Debtors' use of the Cash Collateral plus (b) the value of the accruing post-petition interest on the Lienholders' claims pending further order of the Court;

5. Entering any other relief that this Court deems just and proper.

In support of this motion, the Debtor states as follows.

### I. Jurisdiction.

The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a) and 363(c).

### II. Introduction and Facts.

#### A. The Debtor.

The Debtor is InfoMotion Sports Technologies, Inc. ("InfoMotion" or "Debtor"), a Massachusetts corporation operated out of Massachusetts and with a principal place of

1

business in Ohio. Aff. Crowley, ¶ 1. InfoMotion was founded in 2008 by Michael Crowley, who currently serves as its chief executive officer. Aff. Crowley, ¶¶ 2, 3. InfoMotion develops and sells the 94Fifty Smart Sensor Basketball, a basketball equipped with sensors that send immediate shooting and ball-handling feedback to a mobile smartphone via Bluetooth, and gives players of any skill level access to personal training feedback about shooting and ball-handling skills. Aff. Crowley, ¶ 4. The immediate and precise feedback allows players to improve their muscle memory skills more efficiently. Aff. Crowley, ¶ 5. Time Magazine recognized the 94Fifty Smart Sensor Basketball as one of the "Top 25 Inventions of the Year" in 2014. Aff. Crowley, ¶ 6.

InfoMotion's central innovation is its motion-analysis software, which is also embedded within the chips inside the basketball and used to regulate the information collected from the motion sensors inside the ball. Aff. Crowley, ¶ 7. InfoMotion's software has won numerous awards, including the 2015 Consumer Electronics Show Best of Innovation Award for Software and Mobile Apps, the Bronze Edison Award for Sports and Recreation, and the 3X 2014 Honoree in Gaming Hardware & Accessories, Health & Fitness and Embedded Technologies from CES. Aff. Crowley, ¶ 8. InfoMotion's software has been recognized as a finalist for the 2014 Bluetooth Breakthrough Awards and as the "Best of CES 2014" by iPhone Life Magazine. Aff. Crowley, ¶ 9.

InfoMotion has been able to demonstrate the effectiveness of its motion-sensing technology in the industrial sector within pilot applications designed to optimize production in any situation involving human dexterity. Aff. Crowley, ¶ 10. InfoMotion is confident that its software will provide manufactures with an essential capability to transform tools and equipment that can optimize the skills of its physical laborers by feedback that will increase safety and productivity. Aff. Crowley, ¶ 11. InfoMotion expects to begin its work with manufacturers in 2016. Aff. Crowley, ¶ 12.

      B.     **Events Precipitating the Bankruptcy Filing.**

The Debtor's filing is precipitated primarily by its current debt structure. Aff. Crowley, ¶ 13. In 2010, the Debtor obtained an investment loan from the Director of Development of the State of Ohio ("Ohio") in the amount of $750,000. Aff. Crowley, ¶ 14. In 2013, the Debtor obtained investment loans from a group of investors (the "Tranche

Investors") that committed a total of $5 million towards funding ongoing inventory purchases, with an initial tranche totaling $1,050,000. Aff. Crowley, ¶ 15.

Because of long lead times in manufacturing the 94Fifty basketball and because the Tranche Investors have failed to finance additional loans as they had originally agreed, it has proven difficult for the Debtor to maintain the cash flow necessary to make payments to Ohio and the Tranche Investors timely. Aff. Crowley, ¶ 16. As a result, on November 28, 2015, the Debtor missed a scheduled payment to the Tranche Investors and went into default on their promissory notes. Aff. Crowley, ¶ 17. Consequently, by the terms of its agreement with Ohio, the Debtor is now in default on that promissory note as well. Aff. Crowley, ¶ 18. Moreover, on February 7, 2016, the Debtor was forced to temporarily layoff most of its staff. The Debtor expects that these employees will remain available or return in timeto distribute its April shipment of basketballs to vendors and commence its industrial consulting work (described in more detail below).

Upon reflection and analysis of its financial situation and its prospective future earnings, the Debtor believes that Chapter 11 reorganization will give it the time and breathing room to restructure its debt without the pressure of default interest rates and foreclosure on its assets. Aff. Crowley, ¶ 19.

### III.  The Secured Creditors' Claims Against the Debtor and the Assets Securing the Claims.

The Debtor has several creditors with claims secured by all of the Debtor's assets and personal property. As of the filing date, the total owed to the secured creditors is approximately $1,471,656.66. The secured creditors break down into two groups: Ohio and the Tranche Investors.

#### A.  The State of Ohio.

The State of Ohio ("Ohio") loaned $750,000 to the Debtor in 2001. As of the petition date, Ohio is owed $393,100.50 in principal and $11,931.16 in interest. As collateral for the loan, Ohio was granted a lien on "[a]ll assets and personal property of the Debtor, now or hereafter owned or acquired, and all proceeds thereof." Ohio filed a UCC financing statement with the Secretary of State of the Commonwealth of Massachusetts evidencing its lien. Exhibit 1, Ohio UCC-1.

### B.     The Tranche Investors.

In November 2013, the Debtor entered into agreements with the Tranche Investors. In exchange for their loans, each of the Tranche Investors received a lien on "[a]ll assets of the Debtor, now existing or hereafter acquired, and all proceeds and products thereof." These investors, seven of whom are also equity investors in the company, and the amounts invested are as follows:

| Company | Principal | Accrued Interest | Total | UCC-1 Exhibit |
|---|---|---|---|---|
| Bridlespur Partners Two, LLC | $100,000.00 | $1,583.33 | $101,583.33 | 2 |
| David Schoedinger | $100,000.00 | $1,583.33 | $101,583.33 | 3 |
| David Verbance | $50,000.00 | $791.67 | $50,791.67 | 4 |
| Day Captial Group, LLC | $200,000.00 | $3,166.67 | $203,166.67 | 5 |
| John Mokas | $50,000.00 | $791.67 | $50,791.67 | 6 |
| Sanjay Dolwani | $50,000.00 | $791.67 | $50,791.67 | 7 |
| Thomas Crowley | $100,000.00 | $1,583.33 | $101,583.33 | 8 |
| Wilshire Partners III, LLC | $400,000.00 | $6,333.33 | $406,333.33 | 9 |
| Totals | $1,050,000.00 | $16,625.00 | $1,066,625.00 | |

The Tranche Investors filed UCC financing statements with the Secretary of State of the Commonwealth of Massachusetts evidencing their liens.

### C.     The Assets Securing the Debtor's Claims.

Ohio and the Tranche Investors have liens on all assets of the Debtor. The most significant asset in the Debtor's possession is its intellectual property. Aff. Crowley, ¶ 20. While the Debtor is still in the process of obtaining a valuation of its intellectual property, the Debtor believes that based on the yearly revenues produced by the basketball and the potential for consulting income from the manufacturing sector, a valuation firm would estimate the intellectual property's value at approximately $3.5 million. Aff. Crowley, ¶ 21. Accordingly, this is the amount used for purposes of this motion.

### IV.    Requested Use of Cash Collateral.

In the course of its operations, the Debtor is selling its inventory and collecting pre-petition accounts receivable. Aff. Crowley, ¶ 22. Pursuant to 11 U.S.C. § 363(c)(4), the proceeds of those sales and collections are being segregated into a separate debtor-in-possession bank account. Aff. Crowley, ¶ 23. The Debtor has no source of income other

4

than from the sale of its inventory and the collection of its accounts receivable. Aff. Crowley, ¶ 24. If it is not permitted to use those proceeds, it will have to close down its operations without replacing any of its inventory. Aff. Crowley, ¶ 25. In the absence of the use of Cash Collateral, the continued operation of the Debtor will not be possible, and serious and irreparable harm to the Debtor and its bankruptcy estate will occur. Aff. Crowley, ¶ 26. The use of the cash collateral is therefore critical to preserve and maintain the going concern value of the Debtor, and essential to its reorganization effort. Aff. Crowley, ¶ 27. The Debtor therefore seeks to use the Cash Collateral to continue with business as usual, including to necessary and usual operating expenses, including paying contractors, suppliers, wages, salaries, taxes, for repair and maintenance, and for other operating expenses. Aff. Crowley, ¶ 28.

The Debtor includes a proposed budget through July 2016 projecting how its cash collateral will be used. Aff. Crowley, ¶ 29. As the budget demonstrates, the Debtor expects to continue the sales of its inventory, commission the production of additional inventory, and, most significantly, begin consulting for the manufacturing sector. Each of these activities will exploit the estate's intellectual property, part of the Cash Collateral. Aff. Crowley, ¶ 30. The Debtor anticipates that the consulting revenue will begin in 2016. InfoMotion has been in negotiations with at least one manufacturer and is prepared to begin work when it receives final approval from the manufacturer's management. Aff. Crowley, ¶ 31. The Debtor is also in the process of obtaining additional working capital, likely through DIP financing and the approval of a super-priority lien, that will shore up its cash flow. The Debtor expects that this financing will be finalized soon. Aff. Crowley, ¶ 32. Moreover, the Debtor has been approached by another company to incorporate InfoMotion's technology into clothing and other wearables. Aff. Crowley, ¶ 33.

On the spending side, the Debtor does not anticipate an increase in its fixed costs such as rent and marketing. Aff. Crowley, ¶ 34. The budget also anticipates spending approximately $25,000 to retain a firm that can value InfoMotion's intellectual property. Aff. Crowley, ¶ 35. The Debtor projects that its monthly net operating cash can return to cash flow positive by the end of the 2nd quarter 2016. Aff. Crowley, ¶ 36.

**V.     Adequate Protection.**

A party with an interest in property proposed to be used, sold or leased by the debtor must receive adequate protection for such interest before the debtor may use, sell or lease such property. 11 U.S.C. § 363(e). When adequate protection is required under § 363, it may be provided by, *inter alia*, "providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2).

The entitlement to and measure of the protection required is always determined by the extent of the anticipated or actual decrease, if any, in the value of the secured creditor's collateral during course of the bankruptcy case. See In re First South Savings Assoc., 820 F. 2d 700, 710 (5th Cir.1987).

Adequate protection requires only that the value of the creditor's interest in the cash collateral be protected from diminution while the Debtors are using the cash collateral. United Savings Association of Texas v. Timbers of In- wood Forest Assoc., Ltd., 484 U.S. 365 (1988). It is "intended by the Bankruptcy Code only to assure that a secured creditor, during the pendency of a bankruptcy case, does not suffer a loss in the value of its interest in property of the bankruptcy estate." In re Markos Gurnee Partnership, 252 B.R. 712, 716 (Bankr.N.D.Ill.l997).

To provide Ohio and the Tranche Investors (collectively, the "Lienholders") with adequate protection on account of the use of the Cash Collateral, the Debtors propose to grant them replacement liens (the "Replacement Liens") on the same types of post-petition property of the estate against which the Lienholders held liens as of the Petition Date. The Replacement Liens will maintain the same priority, validity, and enforceability as the Lienholders' respective pre-petition liens. The Replacement Liens will be recognized only to the extent of the diminution in value of the Lienholders' prepetition collateral after the Petition Date resulting from the Debtors' use of the Cash Collateral during the bankruptcy case *plus* the value of the accruing post-petition interest on the Lienholders' claims pending further order of the Court. The Cash Collateral will be used by the Debtor to maintain and preserve the value of the estate consistent with prior practice. Absent the consent of the Lienholders or a further order of this Court, the Debtor will not sell or transfer any of its intellectual property or other Cash Collateral.

Given that all of the Lienholders have security interests in the Debtor's intellectual property and that the value of that property is approximately $3.5 million, the Lienholders are over-secured. The value of the Lienholders' secured position will therefore be adequately protected and the Pre-petition property constitutes adequate protection within the meaning of the Code.

**VI.    No Prior Application.**

No prior application for similar relief has been filed in this Court or any other court.

**VII.    Notice.**

Pursuant to MLBR 4001-2(b), the Debtor will serve this motion on (a) the State of Ohio; (b) the Tranche Investors; (c) the 20 largest unsecured creditors of the Debtor; (d) the Office of the United States Trustee; and (e) all parties who have filed a notice of appearance in these cases. The Debtor believes that this service provides sufficient notice in light of the nature of the relief requested and request that the Court approve that notice.

**VIII.    Conclusion.**

For the foregoing reasons, the Debtor requests that the Court enter the stated relief.

Respectfully submitted,

INFOMOTION SPORTS
TECHNOLOGIES, INC.,

by its attorneys,

/s/ Ira. H. Grolman
Ira H. Grolman, BBO No. 556709
GROLMAN, LLP
The Electric Carriage House
321 Columbus Ave., 6th Fl.
Boston, MA 02116
Ph: (617) 859-8966
Fax: (617) 859-8903
ira@grolmanllp.com